# THOMPSON, *Appellant,*
*v.*
# IDS LIFE INSURANCE COMPANY, *Respondent.*

549 P2d 510

*Carol A. Hewitt,* Portland, argued the cause for appellant. With her on the brief were Lindsay, Nahstoll, Hart, Dafoe & Krause.

*Vawter Parker,* Portland, argued the cause for respondent. With him on the brief were Dezendorf, Spears, Lubersky & Campbell and Stanley R. Loeb.

McALLISTER, J.

## McALLISTER, J.

Plaintiff, Shanin Thompson, brought this action against the defendant, IDS Life Insurance Company, under ORS 30.680, seeking damages for breach of the Public Accommodations Act allegedly caused by the defendant's refusal to sell the plaintiff a policy of insurance on the same terms it would sell such a policy to a male.

The defendant moved for judgment on the pleadings, based on its affirmative defense that the plaintiff's complaint failed to state a cause of action. The motion was granted, and judgment was entered for the defendant.

The plaintiff appeals.

The basic issue is whether the Public Accommodations Act covers insurance so as to prohibit all discrimination on account of race, religion, sex, marital status, color or national origin in the issuing of insurance policies, establishing particular terms, and setting of premium rates.

The plaintiff contends that the specific amendments to the Public Accommodations Act by the 1973 legislature brought both sex discrimination and insurance under the scope of the act so as to make her action maintainable under ORS 30.680.

ORS 30.675(1), as amended by Oregon Laws 1973, Chapter 714, §2, reads:

> "A place of public accommodation, subject to the exclusion in subsection (2) of this section, means any place or service offering to the public accommodations, advantages, facilities, or privileges whether in the nature of goods, services, lodgings, amusements or otherwise."[1]

---

[1]Prior to the 1973 amendment, ORS 30.670 provided:

"All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any place of public accommodation, resort, or amusement,

ORS 30.680, as amended by Oregon Laws 1973, Chapter 714, §3, provides:

> "All persons against whom any distinction, discrimination or restriction on account of race, religion, sex, marital status, color or national origin has been made by any place of public accommodation, as defined in ORS 30.675, by any person acting on behalf of such place or by any person aiding or abetting such place or person in violation of ORS 30.685 shall have a cause of action to recover compensatory and punitive damages from the operator or manager of such place or the employe or person acting on behalf of such place or the aider or abettor of such place or person. * * *"[2]

■ Statutes are to be construed so as to carry out the intent of the legislature. *Pio v. Adcco, Love's Enter./ Kent,* 267 Or 540, 543, 517 P2d 1189 (1974). The legislative history of ORS 30.675 does not include a single reference to insurance. The plaintiff relies on a comment made by a witness at a legislative committee hearing on the proposed change in the statute who said the expanded definition of public accommodation "* * * would include literally all phases of any business soliciting public patronage * * *."[3] Whether or not this statement can be construed to include the sale of insurance, it is only the comment of one individual and of little or no help in determining legislative

without any distinction, discrimination or restriction on account of race, religion, color or national origin."

Prior to the 1973 amendment, ORS 30.675(1) provided:

"(1) A place of public accommodation, resort or amusement, subject to the exclusion in subsection (2) of this section, means:

"(a) Any hotel, motel, motor court, trailer park or campground.

"(b) Any place offering to the public food or drink for consumption on or off the premises.

"(c) Any place offering to the public entertainment, recreation, or amusement.

"(d) Any place offering to the public goods or services."

[2] The only change in ORS 30.680 significant to the case at bar was the addition of sex and marital status as bases for actionable discrimination.

[3] Testimony by Eleanor M. Meyers, Director, Women's Equal Employment Opportunity Program, Civil Rights Division. House Committee on State and Federal Affairs, March 2, 1973, Exhibit 1.

intent. 2A Sands, Sutherland Statutory Construction 209, § 48.10.

Plaintiff relies extensively on testimony given and comments made during hearings by the Interim Committee on Labor, Consumer & Business Affairs the year following adoption of the 1973 amendments. Again, these comments by witnesses before a legislative committee are not persuasive. *Sands,* op. cit. 209. Comments made by individuals following enactment of a statute, although possibly entitled to some consideration, are of little value. *Sands,* op. cit. 203, § 48.06.

We do not have to decide in this case whether the Public Accommodations Act standing alone would apply to the sale of insurance.

Defendant contends that if ORS 30.675 is construed to cover insurance, then it conflicts with ORS 746.015 and 737.310, which give the Insurance Commissioner authority to prohibit unfair discrimination on account of sex.[4]

"In arriving at the legislative intent in the enactment of a statute, it should be read in connection with all statutes relating to the same subject matter, and effect should be given to every word, phrase, sentence, and section of all such statutes, if possible. *State v. Popiel,* 216 Or 140, 145, 337 P2d 303 (1959). * * *" *Kankkonen v. Hendrickson et al,* 232 Or 49, 67, 374 P2d 393, 99 ALR2d 296 (1962).

See, also, *Clarkston v. Bridge,* 273 Or 68, 539 P2d 1094, 1099 (1975); *McLain v. Lafferty,* 257 Or 553, 480 P2d 430 (1971); *Cal-Roof Wholesale v. Tax Com.,* 242 Or 435, 443, 410 P2d 233 (1966). It is this court's

---

[4] ORS 746.015 provides:

"No person shall make or permit any unfair discrimination between individuals of the same class and equal expectation of life or between risks of essentially the same hazard in the application of rates for insurance policies, in the dividends or other benefits payable thereunder, or in any other terms or conditions thereof."

ORS 737.310(1) provides:

"Rates shall not be excessive, inadequate or unfairly discriminatory."

duty, therefore, to harmonize ORS 30.675 and ORS 746.015, 737.310 if possible, rather than create a conflict.

ORS 659.045 gives the Commissioner of Labor authority to investigate grievances under the Public Accommodations Act. ORS 30.680 gives an individual a private cause of action for violation of the Public Accommodations Act. If insurance is included within the scope of the Public Accommodations Act, then reading these statutes together with ORS 746.015 and 737.310 means either that the Insurance Commissioner has concurrent authority to eliminate discrimination or that the Insurance Commissioner has been divested of his authority to eliminate discrimination in the insurance industry.

The problem with construing the statutes so as to include insurance under the Public Accommodations Act and to still give effect to ORS 746.015 and 737.310 is that different standards are established. The Insurance Commissioner is instructed to eliminate unfair discrimination, whereas the Public Accommodations Act prohibits *all* discrimination. The reason for the different standards, as the plaintiff recognizes in her brief, is that insurance, to some extent, always involves discrimination, to a large degree based on statistical differences and actuarial tables.[5] The legislature specifically intended, in enacting ORS 746.015 and 737.310, to only prohibit *unfair* discrimination in the sale of insurance policies. Plaintiff concedes that some practices would be upheld by the Insurance Commissioner which would not be upheld by the Labor Commissioner. Such administrative conflict should be avoided. In construing statutes, the practical administrative result is persuasive. *State Highway Com. v. Rawson,* 210 Or 593, 611, 312 P2d 849 (1957).

The facts and holding of *State Highway Com. v. Rawson* are applicable to this case. One statute

---

[5] A review of the applicable law is found in Comment, Gender Classifications in the Insurance Industry, 75 Col L Rev 1381 (1975).

involved in *Rawson* authorized the Land Board to execute leases for mining on any state-owned land with proceeds to go to the School Fund. The second statute authorized the Highway Commission to sell or lease certain state-owned lands with proceeds to go to the State Highway Fund. The land at issue in the case was purchased with State Highway Commission funds for purposes specified in the statute. The problem was whether the proceeds from a lease of that land should go to the School Fund or the Highway Fund. The court held, at 615:

> "It is apparent that the same land cannot be at the same time subject to the complete or exclusive control of two separate state agencies, nor can the funds expended and proceeds received come from or be placed in two mutually exclusive funds. Under the authorities cited it is our clear duty if possible to harmonize the seemingly inconsistent provisions of statute so as to give effect to both, in accordance with the apparent legislative intention."

■ To avoid the apparent conflict, the court held that the words "any land which is owned by the state" in the statute directing proceeds to the School Fund was *not* to include lands owned by the state but under the exclusive control of a different state agency. *State Highway Com. v. Rawson, supra,* 210 Or at 619-620. The court held that the authority of the State Land Board did not extend to execution of mining leases on lands held by the Highway Commission. The court specifically rejected a construction of the statutes which would allow interference and obstruction of one state agency by another in the latter's exercise of its statutory powers and duties. *State Highway Com. v. Rawson, supra,* 210 Or at 627.

■ Interpreting the Public Accommodations Act as not including insurance would avoid any conflict between the two state agencies otherwise involved and prevent the possibility of obstruction or interference with the Insurance Commissioner's statutory powers and duties under ORS 746.015 and 737.310 by the Labor Commissioner.

■■ A second rule of construction, which is likewise persuasive in finding that insurance is not within the scope of the Public Accommodations Act, is the rule that a specific or special act controls over a general act. This is the rule even if, as here, the general act was enacted later. *Sands,* op. cit. 315, § 51.05. See, also, *State v. Pearson,* 250 Or 54, 58, 440 P2d 229 (1968); *State Highway Com. v. Rawson, supra,* 210 Or at 621-622; 82 CJS 839, Statutes § 369. Absent a plain indication of intent to repeal the special act, the special act will continue to have effect and the general act will be modified by construction so the two can stand together; one as the general law of the state and the other as the law of the particular case or as an exception to the general rule. *Appleton et al v. Oregon Iron & Steel Co.,* 229 Or 81, 86, 358 P2d 260, 366 P2d 174 (1961).

■ The same session of the legislature which amended the Public Accommodations Act to expand the definition of accommodations and include sex and marital status also passed a statute, ORS 743.037, which specifically prohibits discrimination on account of marital status in particular health insurance policies. Oregon Laws 1973, Chapter 521, § 2. If insurance was intended to be included under the Public Accommodations Act, then there would have been no reason to enact ORS 743.037. A legislative act, however, is not to be deemed meaningless. *Standard Ins. Co. v. State Tax Com.,* 230 Or 461, 468, 370 P2d 608 (1962). ORS 743.037 has significant meaning only if insurance is not within the scope of the Public Accommodations Act.

We conclude that ORS 30.675 does not cover the sale of insurance and an action based on sex discrimination in the issuance of an insurance policy cannot be maintained under ORS 30.680. Plaintiff's complaint, therefore, did not state a cause of action and defendant's motion for judgment on the pleadings was properly granted.

The judgment of the trial court is affirmed.